831 So.2d 745 (2002)
Tommy C. HOBBS, Appellant,
v.
DEPARTMENT OF TRANSPORTATION, Appellee.
No. 5D01-3790.
District Court of Appeal of Florida, Fifth District.
November 15, 2002.
Rehearing Denied December 12, 2002.
*746 Roy A. Praver of Law Offices of Roy A. Praver, Titusville, for Appellant.
Pamela S. Leslie, General Counsel and Richard A. Weis, Assistant General Counsel for the Department of Transportation, Tallahassee, for Appellee.
PALMER, J.
Tommy C. Hobbs appeals the final order entered by the Department of Transportation (DOT) denying his application for a sign permit. Concluding that DOT erred in ruling that Hobbs' sign was not grandfathered in at the time the property was rezoned, we reverse.
In 1983, Hobbs purchased land adjacent to Interstate 95 in Brevard County. Included in the purchase of the land was the purchase of an outdoor advertising sign which was located on the property. At the time Hobbs purchased the land, the sign was leased to Cape Kennedy KOA (KOA) for purposes of advertising. KOA had obtained, and continuously maintained, a state permit authorizing such use. KOA continued to lease the sign from Hobbs and to maintain the permit through December 1998. Of particular importance to the instant appeal, during that fifteen year time period, Brevard County rezoned Hobbs' property to RR1 which authorized the land for residential use only. The rezoning caused the advertising sign to become a nonconforming use, but the county and DOT determined that the use was legally existing. Consequently, upon application by KOA, DOT continued to renew the sign permit even after the zoning change.
*747 No problems arose until December 1998, when KOA asked DOT to cancel its sign permit and DOT agreed. No one notified Hobbs of this action. When he later discovered that KOA's sign permit had been cancelled, Hobbs began efforts to obtain a new sign permit. He first sought the necessary permission from Brevard County. On November 1, 2000, a Brevard County official certified that Hobbs' sign was "not in compliance with local ordinances, but is legally existing as a non-conforming sign." Based upon this certification, Hobbs applied to DOT for a sign permit. However, DOT denied the application, stating that the sign was "not permittable under land use designations of site."
Hobbs thereafter requested a hearing in order to challenge the denial. The hearing officer issued a recommended final order concluding that, although the sign had legally existed as a nonconforming use while KOA was leasing it, use of the sign became illegal once KOA's permit was canceled. The hearing officer recommended that DOT issue a final order finding that Hobbs' permit application was properly denied and ordering that the sign be removed from his property. DOT issued a final order adopting, in toto, the hearing officer's findings of fact and conclusions of law. This appeal timely followed.
In reviewing an administrative agency's final order, an agency's findings of fact must be upheld if they are supported by competent, substantial evidence. See § 120.68(10), Fla. Stat. (2001); Pershing Industries, Inc. v. Dep't of Banking & Finance, 591 So.2d 991, 994 (Fla. 1st DCA 1991). With regard to conclusions of law, Florida courts defer to an agency's interpretation of statutes and rules the agency is charged with implementing and enforcing, unless they are clearly erroneous or contrary to law. See Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1283 (Fla.2000); Republic Media, Inc. v. Dep't of Transp., State of Fla., 714 So.2d 1203 (Fla. 5th DCA 1998).
Hobbs challenges DOT's denial of his application for a sign permit arguing that such use is legally existing. DOT responds by arguing that the denial was proper because the property on which the sign is located is presently zoned for residential purposes only. While acknowledging that it renewed KOA's permit annually even after Hobbs' land was rezoned, DOT contends that a distinction exists between "renewing" an existing permit and "issuing" a new permit. DOT contends that, "although an existing permit may be renewed for a nonconforming sign, a new permit may not be issued for a nonconforming sign. See § 479.07(8)(a), Fla. Stat. (2001); Fla. Admin. Code R. 14-10.0041." We disagree, relying on Lewis v. City of Atlantic Beach, 467 So.2d 751 (Fla. 1st DCA 1985), a liquor license case wherein the First District rejected the same argument which DOT raises here.
In Lewis, the landowner constructed a building on his property solely to be used as a lounge. The landowner leased the property to a tenant, who obtained a valid liquor license and operated a lounge for several years. During that time, the city amended its ordinance by requiring that such establishments be more than 1500 feet apart, which made the lounge non-conforming. After the tenant's liquor license came under investigation, the landowner attempted to obtain a new license in his own name. The city denied the landowner's application, acknowledging that the tenant's nonconforming use of the property as a lounge was grandfathered in, and thus allowed for the renewal of his permit, but maintaining that the grandfathered status did not apply to the landowner because he was attempting to obtain a *748 new permit. The First District rejected the city's argument, stating:
The application of zoning regulations to restrict an existing use of property, resulting in substantial diminishing of its value, may constitute a "taking" by the governmental agency which requires the payment of compensation under well-established principles of constitutional law. 82 Am.Jur.2d, Zoning and Planning, § 178. To avoid these consequences, zoning regulations generally "grandfather" the continuation of existing nonconforming uses on property subject to the zoning classification. State v. Danner, 159 Fla. 874, 33 So.2d 45 (1947). By the same token therefore, it is reasonable to conclude that the termination of such grandfathered nonconforming uses may result in a "taking" for constitutional purposes unless the basis of such termination accords with applicable legal principles.
We have been cited to no legal authority upholding the proposition that a municipality can terminate a grandfathered nonconforming use of property simply because the tenant and operating license holder of the establishment on the property undergoes a change. It is clear that the concept of grandfathered nonconforming use relates to the property and the use thereof, not to the type of ownership or leasehold interest in the property. City of Miami Beach v. Arlen King Cole Condominium Assn., Inc., 302 So.2d 777 (Fla. 3d DCA 1974).
Id. at 754 (emphasis added). The court in Lewis held that "the city illegally withheld certification that the nonconforming use of the premises could be continued by appellants under these circumstances." Id. at 755. We conclude that this same reasoning applies to the instant case and supports Hobbs' claim that the right to use the sign located on his property did not become illegal simply because the entity which applied for a permit to use the sign changed. Further support for our ruling is found in the fact that there is no statute or rule which supports DOT's determination that it cannot issue a new permit for a legally existing, nonconforming sign.
DOT further argues that, even if the sign legally existed, its decision to deny Hobbs' application should be affirmed because Hobbs abandoned or discontinued using the sign by leaving it blank for over 12 months. DOT relies on rule 14-10.007(6)(b) of the Florida Administrative Code, which states:
A nonconforming sign is "abandoned" or "discontinued" when the sign owner fails to operate and maintain the sign for a period of 12 months or longer.
Generally, temporary cessation of a nonconforming use does not operate to effect abandonment of the nonconforming use. Instead, abandonment occurs when the landowner "intentionally and voluntarily foregoes further non-conforming use of the property." Lewis, 467 So.2d at 755 (citing 82 Am.Jur.2d, Zoning and Planning, § 216). While no Florida courts have interpreted rule 14-10.007(6)(b), two Florida cases have addressed ordinances recognizing similar time requirements as being evidence of abandonment.
In Peters v. Thompson, 68 So.2d 581, 582 (Fla.1953), the Florida Supreme Court held that where a county zoning ordinance deemed a non-conforming use abandoned if it was not used for over six months, the board of county commissioners did not have the authority to issue a new permit where it was clear the property had not been used for over six months. In reaching this decision, the court emphasized the fact that no "effort was made to renew the license." Id. at 582. In Crandon v. State ex rel. Uricho, 158 Fla. 133, 28 So.2d 159 *749 (1946), an airport in Dade County was closed in 1942 by the Civil Aeronautics Board as a war measure. When the war was over, the county sought to prohibit the airport from reopening based on an ordinance which prohibited continuation of non-conforming uses where the use had been discontinued for over six months. The supreme court disagreed with the county, finding that the discontinuation was involuntary. Id.
Here, DOT does not dispute Hobbs' assertion that "[a]t the conclusion of KOA's lease for the use of the sign, Mr. Hobbs began to apply for a permit by making application to Brevard County". This assertion is supported by Hobbs' permit application, which reflects that Brevard County officials determined the zoning designation on January 5, 2000, and issued final approval for the sign on November 1, 2000. Thus, Hobbs was actively pursuing a new permit with Brevard County, whose permission was necessary for the DOT application. Hobbs apparently stopped leasing the sign while he was attempting to obtain a new permit since he could not have properly continued advertising on the sign until a new permit was obtained. On this record, there is no evidence that Hobbs intended to abandon his right to advertise on the sign.
Having found no legal basis to support DOT's decision, we reverse the order denying Hobbs' application for a sign permit.
REVERSED and REMANDED.
COBB and PLEUS, JJ., concur.