HAZOURI, J.
This appeal arises out of a petition for voluntary annexation filed with the Village of North Palm Beach (“Village”) by Live Oak Plaza, LLC (“Live Oak”), the owner of a 2.62 acre parcel of property located on the west side of Alternate AIA (“Property”), contiguous with the then-existing corporate limits of the Village. Through the adoption of Ordinance No. 2008-10 on September 11, 2008, the Village Council granted the voluntary annexation petition pursuant to section 171.044, Florida Statutes, and annexed the property into the Village.
At the time of the annexation, S & H Foster’s, Inc. d/b/a Foster’s Pub (“Pub”) operated an establishment through a lease with Live Oak. For many years prior to the annexation, the Pub was considered an “after hours bar” serving alcoholic beverages until 5:00 a.m.
The Pub sought and obtained a declaratory judgment preventing the Village from enforcing Section 3-2 of the Village Code of Ordinances which prohibits the sale or on-premise consumption of alcoholic beverages between the hours of 2:00 a.m. and 7:00 a.m. The trial court ruled that the Pub had a leasehold agreement with Live Oak which permitted the Pub to sell alcoholic beverages between the hours of 2:00 a.m. and 5:00 a.m. and thereby created a vested right which could not be restricted by the voluntary annexation for the duration of the lease. We reverse.
The lease between the Pub and Live Oak specifically requires that the Pub “comply with all laws, ordinances, rules and regulations of governmental authority respecting [its] use, operation and activities” on the Property. The lease term in existence at the time of annexation expired on December 31, 2010.[1]
As of 2008, the Pub had been operating on the Property for approximately sixteen years, selling alcohol for on-premises consumption for twenty-two hours per day, from 7:00 a.m. to 5:00 a.m. The regulations in effect for unincorporated Palm Beach County permitted such hours of operation.
For at least twelve years prior to the Village’s voluntary annexation of the Property, Section 3-2 of the Village Code of Ordinances prohibited the sale or on-premise consumption of alcoholic beverages between 2:00 a.m. and 7:00 a.m. every day of the year, including Sunday, with the exception of January 1.
*435 Following the annexation the Pub requested the court to enter an order allowing it to continue operating “under its grandfather status” and sought a temporary injunction from enforcement of the Village Code. The Village filed a motion to dismiss the complaint, which stated that Section 8-2 prohibits the sale or service of intoxicating beverages on premises between 2:00 a.m. and 7:00 a.m. There was no dispute that once the property the Pub is on was annexed into the Village, the Village’s ordinances applied to the Pub. The Village also argued that the Pub did not establish the criteria necessary for a temporary injunction, including a clear legal right.
At a hearing on the request for a temporary injunction, the attorneys presented arguments regarding applicable statutes and whether the Pub had a property interest. Sherry Foster, the president of the Pub, testified regarding how long she had owned the Pub, the time left on her lease, and how she tracks profits. She stated that aside from profits lost between 2:00 a.m. and 5:00 a.m., she would lose business from customers in the hours leading up to 2:00 a.m., as those customers would choose to go to a bar with a later closing time. She further testified about the impact on her employees. The court entered a temporary injunction preventing the Village from enforcing Section 3-2 against the Pub. The Village appealed the non-final order, and this court affirmed per curiam. See Village of N. Palm Beach v. S & H Foster’s, Inc., 5 So.3d 686 (Fla. 4th DCA 2009).
Following the non-jury trial on the complaint for declaratory relief the court entered an order which found, inter alia, the following:
The premises of Plaintiff, S & H Fosters, Inc. (“Foster’s Pub”) has operated as a bar for more than 40 years, the last 17 of those years under the ownership of the Plaintiff under a lease which it signed with the prior owners of the real property. The current lease terminates in December 2015. Until the annexation, Foster’s Pub was located in an unincorporated area of Palm Beach County and was lawfully permitted to stay open between the hours of 2:00 a.m. and 5:00 a.m.
[[Image here]]
The Court finds that a reduction in the allowable hours of operation negatively affects Foster’s Pub’s use of the property. Foster’s Pub and its predecessors have been open until 5:00 a.m. for almost fifty years; it is an after hours club, and closing at 2:00 a.m. would destroy that distinction. Furthermore, enforcement of section 3-2 of the Town Code would cause serious financial harm because 32-35% of Foster’s Pub’s business occurs between the hours of 2:00 a.m. and 5:00 a.m.
[[Image here]]
[T]he annexation was requested by the landowner, not the leaseholder. Contra 171.044(2), Fla. Stat. (“Upon determination ... that the petition bears the signatures of all owners of property in the area proposed to be annexed, the governing body may ... adopt a nonemer-gency ordinance to annex said property.”) Although Foster’s Pub does not hold a fee simple absolute, they have the exclusive right to use and possess the subject property until December 2015 and therefore have a protected interest in the property.
The cases relied upon by the Village are distinguishable because they are cases in which a restrictive ordinance was passed and enforced against the then-existing residents within the existing boundaries of a municipality ... Such voluntary annexation caused the imple *436 mentation of restrictive operating hours, destroying Foster’s Pub’s significant property rights to the existing leasehold. Furthermore, the evidence clearly showed that the Village was aware that the annexation would significantly impact Foster’s Pub’s leasehold operation in the annexed land ... it is abundantly inequitable for the Village to enforce its “time liquor sales ordinance” on the Plaintiff, who did not acquiesce to the annexation ... Foster’s Pub is entitled to continue operating between the hours of 2:00 and 7:00 a.m.[2] pursuant to its grandfather status until its leasehold expires in December 2015.
On review of a declaratory judgment, we defer to the trial court’s factual findings if supported by competent, substantial evidence. Lawyers Title Ins. Co., Inc. v. Novastar Mortg., Inc., 862 So.2d 793, 797 (Fla. 4th DCA 2003). The court’s conclusions of law are reviewed de novo. Id.
The Village argues that the trial court erred for several reasons. First, it argues that under two Florida statutes and case law, the Pub had no entitlement to relief. Second, it contends that contrary to the trial court’s ruling, the Pub was merely a leaseholder whose consent to annexation was not required. Third, it argues that the equitable relief the court fashioned-granting of grandfather status-is limited to cases involving zoning ordinances, and that equitable relief was not proper in this case. The Pub responds that the court properly considered its leasehold interest as one factor among many in deciding to grant equitable relief, and that when this court per curiam affirmed the granting of the temporary injunction, it established the law of the case as to whether equitable relief was proper.
We turn first to the Pub’s argument that the law of the case doctrine applies. The Pub argues that in order to make a proper showing for a temporary injunction, a party must have stated a cause of action. Thus, the reasoning goes, by affirming the order granting a temporary injunction, this court must have found that the Pub was entitled to the declaratory relief which was granted.
“[Questions of law actually decided on appeal must govern the case in the appellate court and in the lower tribunal in all subsequent stages of the proceeding.” Parker Family Trust I v. City of Jacksonville, 804 So.2d 493, 497-98 (Fla. 1st DCA 2001) (quoting Fla. Dep’t of Transp. v. Juliano, 801 So.2d 101, 102 (Fla.2001)). However, “[t]he affirmance of a temporary injunction on appeal determines only that a proper showing[3] was made at the time the injunction was applied for.” See Whitby v. Infinity Radio, Inc., 951 So.2d 890, 896 (Fla. 4th DCA 2007) (quoting El Segundo Original Rey de la Pizza Cubana, Inc. v. Rey Pizza Corp., 682 So.2d 697, 697 (Fla. 3d DCA 1996)). Factual findings and legal conclusions made by the court at a temporary injunction hearing are not binding on the trial court at final hearing where the parties present more evidence. See Kozich v. *437 DeBrino, 837 So.2d 1041, 1043-44 (Fla. 4th DCA 2002).
In Kozich, a caulking company sued an employee for conversion of materials as well as other claims. The company secured a temporary injunction preventing the employee from filing notices of lien against the company’s customers. The court’s order found that the employee was not entitled to file liens against the company’s projects. This court affirmed the order. The employee then filed counterclaims against the company and its insurer, alleging various wrongs related to nonpayment. The company and insurer moved to dismiss, and argued that the temporary injunction was the law of the case finding that the employee was not a lienor under state law. The trial court agreed and dismissed the counterclaim that was based on liens. This court held that the factual findings and legal conclusions made by the trial court at the temporary injunction hearing “are not binding on the court on final hearing, where the parties present their full case to the court.” Kozich, 837 So.2d at 1043-44 (citing Ladner v. Plaza Del Prado Condo. Ass’n, 423 So.2d 927, 929 (Fla. 3d DCA 1982)). We find that under Kozich, the law of the case doctrine does not bar review of the equitable relief granted on final hearing.
We now turn to whether it was proper for the court to grant the equitable relief of grandfather status to the Pub until its lease expires in 2015. The Village argues that two Florida statutes are on point and bar the type of relief granted to the Pub.
Section 171.062, Florida Statutes (2010), provides in relevant part:
(1) An area annexed to a municipality shall be subject to all laws, ordinances, and regulations in force in that municipality ... upon the effective date of the annexation.
§ 171.062(1), Fla. Stat. (2010).
Section 562.14, Florida Statutes (2010), provides in pertinent part:
(1) Except as otherwise provided by county or municipal ordinance, no alcoholic beverages may be sold, consumed, served, or permitted to be served or consumed in any place holding a license under the division between the hours of midnight and 7 a.m. of the following day....
§ 562.14(1), Fla. Stat. (2010).
Pursuant to section 562.14(1), the Village was permitted to enact Section 3-2, which regulates the sale of alcoholic beverages within its borders. Our courts have rejected challenges to such ordinances. See Playpen S., Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981) (affirming denial of temporary injunction and reasoning that bar did not have clear legal right to injunction, since city has statutory power to set times for sale of liquor, and the ordinance passed by referendum); Other Place of Miami, Inc. v. City of Hialeah Gardens, 353 So.2d 861 (Fla. 3d DCA 1977) (affirming dismissal for failure to state a cause of action, where bar essentially complained that city’s refusal to grant grandfather status was unreasonable); S. Daytona Rests., Inc. v. City of S. Daytona, 186 So.2d 78 (Fla. 1st DCA 1966) (affirming denial of injunctive relief where restaurant complained that liquor sales ordinance was capricious, a deprivation of property rights, and an unreasonable exercise of police powers, and reasoning that section 562.14, Florida Statutes, gives cities the power to regulate sale of alcoholic beverages).
The Pub does not directly challenge the liquor sales ordinance. Instead, the Pub challenges the annexation ordinance. It characterizes the annexation ordinance as *438 a “callous zoning decision.” It argues that zoning case law applies, but fails to cite any cases where courts granted grandfather status[4] or enjoined enforcement of an ordinance regulating the times liquor may be sold. The Pub cites Lewis v. City of Atl. Beach, 467 So.2d 751 (Fla. 1st DCA 1985). That case is inapplicable. There, the city enacted an ordinance barring drinking establishments within a certain distance from other drinking establishments. The ordinance provided grandfather status to drinking establishments already in violation of the distance provision. The court held that when the tavern’s ownership changed, it did not lose the nonconforming use grandfather status since the status was not abandoned. Id. at 754-55.
Pursuant to section 562.14(1), the Village had the authority to enact its ordinance regulating sale of alcohol. The Pub does not dispute that the Village followed the procedures for voluntary annexation provided for in section 171.044. Under section 171.062(1), once the property was annexed, the Pub had to comply with the liquor sales ordinance.
We therefore hold the trial court erred in granting grandfather status to the Pub for the sale of alcohol between the hours of 2:00 a.m. and 5:00 a.m. and reverse and remand for the entry of a declaratory judgment in favor of the Village.

Reversed and Remanded.

POLEN and TAYLOR, JJ., concur.

. On April 20, 2010, approximately sixteen months after the Village Council adopted Ordinance No. 2008-10, appellee exercised its option to extend the lease for an additional five year term, through December 31, 2015.

. On motions for rehearing, the court amended the operating hours to "2:00 a.m. and 5:00 a.m.”

. To obtain a temporary injunction, the mov-ant must demonstrate "(1) that it will suffer irreparable harm unless the status quo is maintained; (2) that it has no adequate remedy at law; (3) that it has a substantial likelihood of success on the merits; and (4) that a temporary injunction will serve the public interest.” Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc., 824 So.2d 226, 227 (Fla. 4th DCA 2002) (citation omitted).

. A review of zoning cases reflects that grandfather status is a creation of the zoning ordinance. See, e.g., Lewis v. City of Atl. Beach, 467 So.2d 751 (Fla. 1st DCA 1985).